**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-296-RDM** |
| **v.** | : | |
| | : | |
| **JEFFREY GRACE,** | : | |
| | : | |
| **Defendant.** | : | |

**MOTION TO MODIFY PRETRIAL CONDITIONS OF RELEASE TO PROHIBIT**
**POSSESSION OF ANY FIREARMS , WEAPONS OR DESTRUCTIVE DEVICES**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully requests that the Court modify defendant Jeffrey Grace's pretrial conditions of release to impose a new condition that would prohibit him from possessing "any firearms, weapons, or destructive devices" in lieu of the current condition that he not possess any "illegal" firearms.   The undersigned counsel communicated with representatives from the Pretrial Services Agency ("PSA") in the District of Columbia, who concur with the government's recommendation.   The proposed conditions of release comport with the national standard, per PSA, align with the conditions imposed on Jeffrey Grace's adult son, Jeremy Grace, who is charged with similar conduct, and they are warranted in light of recent escalating and troubling events described below.

***Defendant's Charged Conduct***

On January 6, 2021, thousands of people took part in a deadly and destructive attack on the U.S. Capitol in an effort to disrupt the certification of the results of the 2020 presidential election. They forced their way into the U.S. Capitol Building, which was closed to the public, delaying the certification, requiring elected officials and their staff to flee or shelter in place, and injuring over one

hundred law enforcement officers.

Stemming from his participation in the events on January 6, the defendant was arrested on January 28, 2021, pursuant to a one-count complaint charging him with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1).   Dkt. 1, 7.   He was later charged in a four-count Information, dated April 12, 2021, with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1)); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D)); and parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. §5104(e)(2)(G)).   Dkt. 9.

As set forth in the Statement of Facts supporting the complaint, when a federal law enforcement agent interviewed Grace weeks before he was arrested, Grace stated that he traveled with his adult son from his home in Washington state to Washington, D.C., to attend the January 6 rally for then-President Donald Trump.   Grace claimed that, after the rally, he got separated from his son.   He admitted that he entered the U.S. Capitol Building, went inside the Rotunda, cleaned up after others, and left the building.   Grace insisted that he entered the building alone, without his adult son.   During his interview, Grace also denied membership with other organizations, including the Proud Boys.   *See United States v. Jeremy Grace*, 21-cr-492-RDM, Complaint, Dkt. 1.

After Grace's arrest, the investigation continued and revealed that, contrary to Grace's assertions, Grace's adult son Jeremy Grace accompanied him inside the Rotunda.   Selfie-style videos found in the "trash" folder on Grace's cell phone depicted Grace and his son inside the

2

Rotunda and outside the U.S. Capitol Building, chanting "our house, our house," and the like. (Jeremy Grace was later charged with the same four misdemeanors.  *See United States v. Jeremy Grace*, 21-cr-492-RDM, Complaint, Dkt. 1.)   The investigation also revealed that the defendant was an active member of the Proud Boys and that he walked among a large gathering of other Proud Boys toward the U.S. Capitol Building grounds and through the barricades outside.   *See* Statement of Facts supporting Jeremy Grace's complaint.  *Id.*

### *Defendant's Current Pretrial Conditions of Release*

On February 9, 2021, at Grace's initial appearance and before he was later charged with additional crimes, the Magistrate Judge released the defendant on his own recognizance and set a variety of conditions of release.   This included ordering that Grace "possess no *illegal* firearms." (emphasis added).  *See* Dkt. 6, Order Setting Conditions of Release, dated February 12, 2021, Paragraph (s).   Notably, Paragraph (k) of the attached pre-printed AO119B Form, "Additional Conditions of Release," was not checked.   Paragraph (k), if checked, would have ordered that the defendant "not possess a firearm, destructive device, or other weapon."   The defendant has been and is being supervised by the Washington, D.C.-based Pretrial Services Agency.

### *Defendant's Recent Conduct While Armed and Engaging in Pre-Planned Confrontations*

As set forth below, the defendant, who has a concealed carry permit, carried a firearm when he was in Portland, Oregon, this past weekend, August 7-8, 2021, and in El Paso, Texas, last month in or about July 20-22, 2021.   In Portland, Grace also appeared to carry a black baton, and at another event, possibly on August 8, Grace wore a helmet while carrying what appears to be a can of chemical irritant and a wood-colored baton.   In both Portland and El Paso, Grace engaged in what appear to be pre-planned confrontations with individuals.   In Portland, Grace described

those as "antifa" members and in El Paso, he described them as illegal immigrants crossing the border from Mexico.   Given this troubling escalation, the government recommends that the Court modify the defendant's conditions of release, and, as provided in Paragraph (k) AO119B Form, order that he "not possess a firearm, destructive device, or other weapon."

*Grace's Providing Armed "Security" Against Suspected "Antifa" Demonstrators in Portland, Oregon, on August 7, 2021*

On or about August 7, 2021, the defendant traveled with part of a larger group from his home in Battle Ground, Washington, to Portland, Oregon, about 30 minutes away.   As he later described it on his "Our House" YouTube channel, Grace went to Portland in order to provide "perimeter security" for a pastor who was giving a speech.   According to Grace, the pastor and other attendees were confronted by "antifa" members.   (Grace operates a YouTube channel, dubbed "Our House," where he posts videos in which he raises funds for himself and describes his various travels, including videos labeled "August 9," "Yesterday at the Waterfront," "From El Paso," "350 Illegals Came Through Here Today," and "Police Encounter."   *See* https://www.youtube.com/channel/UCJGrIotZ128yQHpaO3D_RGw.)

The event was reported in the news media.   *See* https://www.koin.com/news/protests/groups-clash-in-downtown-portland-brief-skirmishes-reported/   and   https://www.oregonlive.com/crime/2021/08/portland-police-no-show-as-rival-factions-brawl-right-wing-militant-aims-replica-assault-rifle.html

In addition, videos and photographs of the Portland event were posted on Twitter and Reddit.   It appears from these videos and photographs that Grace was carrying a firearm and at times holding what appears to be a baton.   Grace can be seen with his hand on what appears to be

his side -holstered firearm, which was displayed in full view.   Screenshots taken from

photographs and videos appearing on the Twitter account @SeditionHunters at the thread

https://twitter.com/SeditionHunters/status/1424394879849975815

are below:







A screenshot taken from another video, found on the Twitter post, https://twitter.com/8RUNCH/status/1424164498131152901, is below.   It appears to depict Grace and his group in Portland confronting another individual under a bridge.   Grace (on the left, wearing an olive-green shirt, black baseball cap and black neck gaiter) can be seen shoving the other individual (whose face was pixilated by the Twitter poster).



al.



As noted, later, on Grace's YouTube channel, he explained that he attended the Portland event and was providing "perimeter security." He stated that he will "give some back" to "Antifa" in the future, that he is looking forward to the next event, and that he will "do it again proudly." (*See* "August 9" and "Yesterday at the Waterfront" video. https://www.youtube.com/channel/UCJGrIotZ128yQHpaO3D_RGw.)

In another photograph that has been posted online, set forth below, Grace can be seen wearing a black helmet and holding what appears to be a wooden baton and a can of chemical

irritants.  It is unclear where and when this photograph was taken.  The photograph has been dated online as August 8, 2021.



https://www.gettyimages.com/detail/news-photo/far-right-extremist-jeff-grace-reacts-to-being-pepper-news-photo/1234585151?fbclid=IwAR0qiyNBd4ViMfn2RCAwaqgIWLV7rhKD1nW794207iEOrx9It XDtt-1yKvg

*Grace's Armed Participation in the Recording of "Illegals" Crossing the Border From Mexico into Texas*

On or about July 20-22, 2021, Grace traveled with a group from Battle Ground, Washington, to in and around El Paso, Texas, near the border with Mexico.  (Grace notified the Pretrial Services Agency in D.C. in advance of his travel to Texas).  Grace and his group apparently went out at night in an effort to record individuals he suspected of illegally crossing into Texas from the Mexico border.  Grace was armed when police confronted him.  Grace and his group were not arrested.  Grace also visited an Immigration and Customs Enforcement ("ICE") facility.  In one video that Grace posted on his YouTube channel, he described his police

encounter and posted a recording of a police response to a report of armed individuals outside an ICE facility.   *See* https://www.youtube.com/watch?v=njRXyqiSCc8.

### *The Government's Proposed Amendment to Grace's Conditions of Release*

The government recommends that the Court modify the defendant's conditions of release, and order that he "not possess a firearm, destructive device, or other weapon."   This modification is necessary in light of Grace's escalating behavior and his willingness to bring his firearm and other weapons to engage in pre-planned conflicts.   It will also bring the defendant's conditions of release in line with other similarly situated defendants, including the defendant's son.   As noted above, the D.C. Pretrial Services Agency supports the government's recommendation.   According to PSA representatives, the national standard for pretrial conditions of release in similarly situated cases is to "not possess a firearm, destructive device, or other weapon," without reference to whether the firearm possession is otherwise lawful.   *See, e.g.,* Paragraph (k) of AO119B Form, "Additional Conditions of Release."   Notably, Jeffrey Grace's son, Jeremy Grace, is under courtesy supervision by his local district, the District of Oregon in Portland.   His conditions of pretrial release provide that, under subsection (k), he "not possess a firearm, destructive device, or other weapon."   *See United States v. Jeremy Grace*, 21-cr-492-RDM, Order Setting Conditions of Release, Dkt. 6.

Amending Grace's conditions of release in this manner comports with the Bail Reform Act.   Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b),

(c)(1).   In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). These conditions may include the condition that the person "refrain from possessing a firearm, destructive device, or other dangerous weapon." 18 U.S.C. § 3142(c)(1)(B)(viii).   In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).   The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

Here, although Grace is currently charged with only misdemeanors, the nature and circumstances of the charged conduct support the proposed weapons restriction.   On January 6, 2021, Grace was surrounded by violence and destruction at the U.S. Capitol Building and willingly joined the fray.   The evidence against him is strong, including his own statements, video recordings and calendar entries found on his cell phone, cell site location information, CCTV footage from the Rotunda, and a Proud Boy-focused video obtained from the *Wall Street Journal*. As for Grace's history and characteristics, it bears noting that, although he admitted being present at the Rotunda, he was not fully candid with law enforcement officers when he was interviewed weeks before his arrest.   Most significantly, Grace's recent escalation in which he twice brought a firearm to pre-planned confrontations with others and vowed to continue doing so, establishes that the proposed amendment is reasonably necessary to protect the safety of the community.

10

With the proposed amendment, Grace would be subject to the "least restrictive" combination of conditions necessary to ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B).   There appears, in this limited instance, no need for such firearms to remain in his possession. The condition does not interfere with his livelihood, and if anything, prevents him from engaging in dangerous expeditions in search of perceived danger. The nature and circumstances of his offense (his participation in the Capitol riot) and his recent escalation demonstrate that he poses a danger.   Notably, Grace is not subject to home detention, a curfew, or GPS monitoring; instead, he must telephone Pretrial Services once a week and is subject to certain travel restrictions.   Together with the proposed prohibition on firearms and weapons possession, these conditions create the least restrictive combination of conditions required to mitigate the particular danger that he poses to the community.

Notwithstanding his involvement in January 6, this escalation is no longer hypothetical and requires imposition of, and Grace's compliance with, the additional proposed conditions of release. *See United States v. Munchel*, 991 F.3d 1273, 1281 (D.C. Cir. 2021) ("[I]t defies logic to suggest that a court cannot consider whether it believes the defendant will actually abide by its conditions when making the release determination in the first place.").

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:        */s/ Mona Sedky*
_____
Mona Sedky
Special Assistant United States Attorney

11

D.C. Bar. Bar 447968
555 4th Street, N.W., Rm. 4842
Washington, D.C. 20530
(202) 262-7122; Mona.Sedky2@usdoj.gov