J. Stephen Roberts, Jr.
Federal Defenders of Eastern Washington and Idaho
10 N. Post St., Ste. 700
Spokane, Washington 99201
(509) 624-7606

Attorneys for Jeffrey R. Grace

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
The Hon. Randolph D. Moss

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Jeffrey R. Grace,<br><br>　　　　　Defendant. | No. 1:21-cr-00296-RDM<br><br>**Sentencing Memorandum** |

Jeffrey R. Grace ("Mr. Grace") submits for the Court's consideration the following Sentencing Memorandum and Exhibit A. [1] For the reasons set forth below, Mr. Grace requests the Court impose a sentence of: time-served, followed by one (1) year of supervised release, no criminal fine, a $25 special penalty assessment; and restitution in the amount of $500.

---

[1] Exhibit A consists of three character letters submitted to the Court by Mr. Grace's family: Morgan McIlroy (daughter), Robert McIlroy (son-in-law), and Andria Grace Haisley (sister).

Sentencing Memorandum - 1

## Guideline Calculations

Mr. Grace has no outstanding objections and agrees with the advisory Guideline Range as calculated in the final Presentence Investigation Report ("PSR"), ECF No. 53 at ¶¶ 30-40. The Guideline Range in the PSR based on his guilty plea to a single count of Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1), is **0 to 6 months**. A Base Offense Level of four is applicable, plus two-levels because the trespass occurred in a restricted government facility. *See* PSR at ¶¶ 30-33. After a two-level reduction for acceptance of responsibility, Mr. Grace's Total Offense Level is 4 and when coupled with a Criminal History Category is I (0 points), yields a 0-6 month Guideline Range. *Id.* at ¶¶ 37-40, and 43.

## Custody Status

Mr. Grace is not presently in custody. He was "arrested" for purposes of the instant offense on February 4, 2021, after making his Rule 5 initial appearance in the District of Oregon. ECF No. 7. ¶ Mr. Grace remains at liberty and resides in Brush Prairie, Washington, located in the Western District of Washington. He was released by the magistrate court in the District of Oregon that same day February 4, 2021 – and has thus spent 1 day in custody for the purposes of the instant offense. [2] To date, Mr. Grace

---

[2] Mr. Grace understands that the Court may believe a greater custodial sentence may be warranted. In that event, he asks the Court to impose a longer a period of probation (no more than 3 years) and to include a home detention (no more than 60 days) or community service component.

**Sentencing Memorandum - 2**

remains in recent compliance with all conditions of his pretrial release (since August/September of 2021) and would request that if a custodial sentence is imposed he be permitted to self-report to the FCI-Sheridan which is located in the District of Oregon.

## Sentencing Considerations

Taking into account the applicable 18 U.S.C. § 3553(a) factors the requested sentence is "sufficient, but not greater than necessary." The Court should consider several factors in fashioning an appropriate sentence in Mr. Grace's case.

### 1. The Nature and Circumstances of the Offense

Mr. Grace traveled to Washington, D.C., from his former home in Battle Ground, Washington to attend then-President Trump's rally on January 6, 2021. He travelled with his son Jeremy Grace and another individual named T.N. [3] T.N., who was a member of the Washington State Proud Boys, encouraged Mr. Grace to attend the rally and come to D.C. – even offering to put the plane fares and lodging on his wife's credit card. [4] After the trio arrived in D.C., they attended a dinner hosted by the Proud Boys. Mr. Grace and

---

[3] As the Court is aware, Jeremy Grace was sentenced to 21 days' custody and 1 year of supervised release in *U.S. v. Jeremy Grace*, 1:21-cr-00492-RDM. Jeremy Grace pled guilty to the same offense as his father.

[4] Upon information and belief, T.N. was not charged with any federal crimes, despite being in the upper echelon of the Proud Boys leadership that were charged and convicted in *U.S. v. Nordean et al.*, 1:21-cr-00175-TJK. He testified in that case for the Government and denied being a government informant on the stand under cross-examination by the defense.

his son left that event early because the evening centered around drinking alcohol. Mr. Grace does not drink and has been sober since 2017.

The next day, January 6, 2021, Mr. Grace marched with his son, T.N., and members of the Proud Boys from the Washington Monument to the U.S. Capitol. As stated above, the plan was to attend President Trump's rally – not storm the Capitol. As the discovery reflects, Mr. Grace eventually marched and was part of larger group that later became a mob. That group became bottlenecked and was positioned near the barricade that would later be known as the "big bang." This area was behind the lower west terrace and plaza of the Capitol. After this barrier was breached, Mr. Grace who was unarmed scampered around the barrier was not engaged in any assaultive or violent behavior.

Mr. Grace recognizes that other individuals did engage in this type of conduct and as the PSR indicates he is remorseful to have been a part of this group. Mr. Grace also points out that as part of the first wave of individuals to enter the Capitol and eventually make his way inside – he did not assault any law enforcement and walked inside the Rotunda through an open door. He was there for only 7 and a half minutes. Instead of destroying property or stealing government property while roaming freely around the Capitol, Mr. Grace sat on a bench with his son and reflected on that moment. It is true his son took photos on a cell phone and made a short video. Mr. Grace and his son soon noticed that other individuals were getting disorderly.

Sentencing Memorandum - 4

Instead of partaking in such behavior, they picked up a stanchion that was knocked over. According to Mr. Grace, he also took away a pipe from another rioter and hid it behind a statute inside the Rotunda. By this time, the doors had closed. Mr. Grace and his son then exited peacefully through a broken window and later flew home to Battle Ground immediately. Mr. Grace submits that this conduct is not extreme enough to warrant to a high-end Guideline sentence.

**2. Mr. Grace's Background**

Mr. Grace, age 64, is before the Court based on his plea to a single misdemeanor count of entering the capitol without permission. He has no criminal history. It has been two and a half years since this case was charged and Mr. Grace has fully accepted responsibility of the instant offense, shut down his social media, and wants to move forward with his life. From his perspective, the events of January 6 left an indelible stain on his family, career, and health. He lost much during this time period including his job which he held for 27 years and his marriage of 42 years. This does not include the family strain of both father and son being charged with federal offenses spanning over 2.5 years.

Mr. Grace's history is detailed in Part C of the PSR. He is a simple man that loves three things: Family, God, and the United States. That may seem strange given his participation in the events of January 6. But if the Court peels back the layers, it can see that Mr. Grace devoted his entire life to two things – his six children and his wife. His children are now grown and lead upstanding lives (that includes Jeremy). His

employment record is spotless, first with a stint in the U.S. Army and later a career as a long-haul truck driver with Daimler North America. As a result of this offense, Mr. Grace was terminated from Daimler and almost lost his pension – this after working from 1994-2021.

To make matters worse, Mr. Grace's marriage imploded. He and his wife Debra divorced after the charge, then reconciled. The couple then split again and finalized their divorce in 2023, after Mr. Grace's guilty plea. Despite this, Mr. Grace has continued to support his ex-wife through her recent kidney cancer diagnosis.

In addition to these struggles, Mr. Grace was diagnosed with prostate cancer based on elevated PSA levels. He is currently seen by his physician and they are evaluating options on how to deal with a benign tumor on his prostate.

### 3. Unwarranted Sentencing Disparities will result if a Guideline Sentence is imposed.

According to 18 U.S.C. § 3553(a)(6), the Court is directed avoid unwarranted sentencing disparities among similarly situated defendants. Mr. Grace points out unwarranted sentencing disparities would occur if the Court imposes a high-end Guideline sentence.

The first is the most obvious. That is, the 21-day sentence imposed in his son's case. The Government has argued that Mr. Grace's case is aggravated because he initially lied to the FBI. While it is true he did lie, Mr. Grace only did so to protect his son. And in

a later debrief he truthfully acknowledged to the FBI his own conduct and the events leading up to his participation on January 6.

Second, there have now been numerous individuals sentenced to less time than six months for offenses with *more* aggravating conduct that Mr. Grace's. *See U.S. v. Jeremy Grace*, 1:21-cr-00492-RDM at ECF No. 38 at 9-12.

What the Court should focus on is Mr. Grace's actual conduct on January 6, 2021. That is no violent entry or assaultive behavior. No weapon used. No property damaged or stolen by Mr. Grace. Simply entry into the Rotunda through an open door. Once inside, the conduct shifts to mitigating. That is picking up the stanchion and taking away the pipe from another individual. This is not conduct that amounts to a six-month sentence.

Mr. Grace asserts that the Court would run afoul of Section 3553(a)(6) were it impose a high-end Guideline sentence in this case. The Court should not follow the government's recommendation and avoid unwarranted sentencing disparities in this case that would result.

4. **The suggested sentence sufficiently deters future criminal conduct.**

The Sentencing Reform Act requires that courts impose sentences that are sufficient, but no more than necessary, to "deter[] … criminal conduct[.]" 18 U.S.C. § 3553(a)(2)(B). A time-served sentence will deter Mr. Grace from future criminal proclivities.

**Sentencing Memorandum - 7**

This is Mr. Grace's first criminal conviction. He has spent the better part of 2.5 years on pretrial release, and after several hiccups in August 2021, has remained in total compliance since September 2021. This is particularly true for someone like Mr. Grace who at age 64 has not spent much time behind bars.

As for general deterrence—the idea that sentencing Mr. Grace to a harsher penalty would deter others—it does not work. As a recent study found, "a large body of prior research … casts doubt on the theory that stiffer prison terms effectively deter drug use, distribution, and other drug-law violations."[5]

But perhaps the most compelling evidence that lengthy prison sentences do not deter crime comes from the Department of Justice. In a May 2016 report, the Department stressed that (1) incarceration is not a very effective way to deter crime, and (2) longer sentences do little to deter crime. Here is a snippet from the report:

---

[5] *See* http://www.pewtrusts.org/en/research-and-analysis/speeches-and-testimony/2017/06/pew-analysis-finds-no-relationship-between-drug-imprisonment-and-drug-problems.

Sentencing Memorandum - 8



The requested sentence is sufficient to achieve deterrence. Any further sentence would be unnecessary.

**5. The newly proposed Guideline for Zero Point Offenders should be Considered**

On April 27, 2023, after a lengthy hiatus, the U.S Sentencing Commission adopted guideline amendments to Congress, which will undergo a 180-day review period. The 2023 amendments will take effect on November 1, 2023, unless Congress intervenes. The following amendment has been identified as potentially having an impact on Mr. Grace's guideline calculation: Amendment 8, Criminal History, Part B Zero-Point Offenders. [6]

Proposed Amendment 8, Criminal History, Part B, introduces a new guideline, §4C1.1, that reduces the offense level by two levels for zero-point offenders with no prior criminal history and no aggravating factors in their current offense. This adjustment is based on studies showing lower recidivism rates among zero-point offenders. The amendment applies to various categories of zero-point offenders, including those without prior convictions, those with prior convictions outside the defined time limits, and those with prior convictions not used for calculating the criminal history category. Exclusion criteria exist for serious offenses or offenses involving violence or sex offenses. The amendment also revises the Commentary to §5C1.1, allowing non-imprisonment sentences for defendants receiving the §4C1.1 adjustment within Zone A or B of the Sentencing Table. Departures are

---

[6] *See* https://www.ussc.gov/guidelines/amendments.

permitted when the guideline range overstates the offense's gravity due to the absence of violence or serious offenses.

Given the recommended guideline, Mr. Grace appears to qualify for the newly created §4C1.1 two-level reduction for qualification as a "zero-point offender." If the amendment is applied, the total adjusted offense level in this case would be a 2. With a criminal history category of I, the guideline range would remain 0 to 6 months, however, Mr. Grace argues this proposed amendment further militates in favor of a sentence of non-imprisonment – due to his low risk of recidivism which the Commission now recognizes with the newly adopted amendment.

## Conclusion

The Court should impose a sentence of time-served, followed by one (1) year of supervised release, no criminal fine, a $25 special penalty assessment; and restitution in the amount of $500. The requested sentence will punish Mr. Grace sufficiently, but not more than is necessary given the facts and circumstances of his case.

Dated:   July 26, 2023

Respectfully Submitted,

*/s/ J. Stephen Roberts, Jr.*
J. Stephen Roberts, Jr., WA 45825
Attorneys for Jeffrey R. Grace
Federal Defenders of
Eastern Washington and Idaho
10 N. Post St., Ste. 700
Spokane, Washington 99201
(509) 624-7606
(509) 747-3539
Email: Steve_Roberts@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Mona Sedky and Taryn Meeks, Assistant United States Attorneys.

*/s/ J. Stephen Roberts, Jr.*
J. Stephen Roberts, Jr., WA 45825
Attorneys for Jeffrey R. Grace
Federal Defenders of
Eastern Washington and Idaho
10 N. Post St., Ste. 700
Spokane, Washington 99201
(509) 624-7606
(509) 747-3539
Email: Steve_Roberts@fd.org